[Cite as *Jardine v. Jardine*, 2022-Ohio-1754.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JASON G. JARDINE,                          :

    Plaintiff-Appellant,           :

                           No. 110670

    v.                             :

CRYSTAL T. JARDINE,                        :

    Defendant-Appellee.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 26, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-20-383667

---

### *Appearances:*

Stafford Law Co., L.P.A., Joseph G. Stafford, and Nicole A. Cruz, *for appellant.*

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., and Richard A. Rabb, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Plaintiff-appellant, Jason G. Jardine, appeals the prejudgment appointment of a receiver to oversee and collect information from businesses that constitute marital property in the divorce proceedings between Jason and his wife,

defendant-appellee Crystal T. Jardine.  After a thorough review of the record and arguments of the parties, we affirm.

## I. Factual and Procedural History

{¶ 2}  Jason and Crystal were married in 1997.  Prior to the marriage, Jason's family owned and operated funeral homes for many years.  During the marriage, the parties operated a number of businesses in the funeral home industry.  Relevant here are Jardine Funeral Home, Inc., Yurch Funeral Home Services, Inc., Vodrazka Funeral Services, Inc., Jardine-Ordner, L.L.C., and Cleveland Cremation, L.L.C.  The parties agree that each has a 50 percent interest in these businesses.  Although the parties dispute to what extent each other worked in the businesses, allegations in the record are that, to some extent, Crystal handled record keeping and bookkeeping and Jason acted as a funeral director or handled aspects of that side of the business.  But the parties significantly downplay the roles each other has in the operations of the businesses.

{¶ 3}  On December 29, 2020, Jason filed a complaint for divorce.  Crystal answered and filed a counterclaim for divorce.  Crystal also moved to add the above businesses to the case, which the trial court granted.  Discovery was contentious.  The parties sought and were granted mutual restraining orders.  Apart from the filings noted below, the docket is crowded with motions to disqualify counsel, and to compel discovery, for protective orders, for restraining orders, to strike, for sanctions, to show cause, and various other discovery-related disputes.

{¶ 4} On March 19, 2021, Crystal filed a motion to appoint a receiver and an emergency motion to appoint a receiver three days later. The initial motion sought a receiver for the entities involved in this appeal as well as Jardine Funeral Care, L.L.C., Jardine-Yurch, L.L.C., Jardine-Vodrazka, L.L.C., Cremation Care, L.L.C., and two houses. The trial court set a hearing date of August 6, 2021, for this and other motions on March 25, 2021. On March 30, Jason filed a brief in opposition to the motion to appoint a receiver and a motion requesting a full evidentiary hearing.

{¶ 5} On April 1, 2021, Crystal filed a supplement to her emergency motion to appoint a receiver and a brief in opposition to Jason's motion for a hearing. The next day, the court issued an order directing the parties to brief the following issues with legal authority and evidence in support:

Is [Jason] a member of the L.L.C.[s]? If so, what is the extent (percentage) of his ownership interest?

Is [Jason's] interest in the L.L.C.[s] marital or separate?

Is [Jason] an officer or director of the L.L.C.[s]?

Is [Jason] an employee of the L.L.C.[s]? If so, what is the nature of his employment: employee-at-will, employee-for-term-of-years, or other term?

Is [Crystal] a member of the L.L.C.[s]? If so, what is the extent (percentage) of her ownership interest?

Is [Crystal's] interest in the L.L.C.[s] marital or separate?

Is [Crystal] an officer or director of the L.L.C.[s]?

Is [Crystal] an employee of the L.L.C.[s]? If so, what is the nature of her employment: employee-at-will, employee-for-term-of-years, or other term?

{¶ 6} On April 8, 2021, Jason filed a reply brief in support of his motion for a hearing. Crystal and Jason filed supplemental briefs addressing the trial court's order on April 16, 2021. That same day, Jason filed a renewed motion for hearing and his own supplemental brief as directed by the trial court's order. The supplemental briefs did not appear to address the issues set forth by the trial court due to discovery-related disputes.

{¶ 7} On April 22, 2021, the trial court issued an order giving the parties additional time to file supplemental briefs after more discovery was completed. The next day, Jason moved to strike Crystal's supplemental brief. On June 7, 2021, Jason and Crystal filed their second supplemental briefs. A week later, the trial court issued an order granting Crystal's motions to appoint a receiver. The trial court summarized the contents of the various filings:

[Crystal's March 19, 2021] motion [for appointment of a receiver] cited R.C. 2735.01(F) as the standard for appointing a receiver in domestic relations cases. The motion offered no other case law or argument. [Crystal's] attached affidavit asserted there were three active funeral homes that were marital property.

[Crystal's] March 22, 2021 Emergency Motion to Appoint a Receiver contained an unsupported assertion regarding interference with email passwords. The affidavit attached was merely a copy of the March 19th affidavit.

[Crystal's] April 1, 2021 Supplemental Emergency Motion to Appoint a Receiver repeated the basic request for appointment of a receiver. Attached was a more substantive, affidavit from [Crystal]. Also attached to [Crystal's] motions were supporting Exhibits A through J.

The myriad of exhibits presented and referenced via affidavit were largely created by [Crystal]. The affidavit also described the self-created documents as large cash or check transfers of money made by [Jason] for various non-business purposes according to [Crystal's] "information and belief" (No. 439777 pg. 2).

Due to the inadequacy of the motions and briefs before the Court, an order was issued requiring supplemental briefs to be filed. Additional briefs were filed by both parties on April 16, 2021. Each party averred they were unable to provide substantive information to the court due to the contentious discovery process. Defendant also limited the request for a receiver to the six (6) business entities, for the first time removing the marital residence and the Florida residence. Defendant attached articles of incorporation for evidence of creation during the party's marriage.

Notably, on April 6th, [Jason] filed two motions, Motion to Add New Party Defendants, and a subsequent Motion for Temporary Restraining Order requesting the restraint of marital accounts in [Crystal's] name at three banking institutions. On April 12th, [Crystal] filed her brief in opposition to both motions. [Crystal] argued the temporary restraining order (hereinafter "TRO") was improper as the bank accounts were business in nature. Further, the brief in opposition asserted that [Crystal] had moved the monies from the marital business accounts to separate banking accounts under [Crystal's] name to ensure business expenses were paid.

The Court issued a journal entry on April 22, 2021[,] ordering the exchange of discovery pertaining to the issue of receivership and ordering production of documents. Both parties complied with filing additional briefs on June 7, 2021.

[Crystal's] brief attached exhibits that showed [Jason] and [Crystal] as 50% shareholders in Yurch Funeral Home Services, Inc., and Vodrazka Funeral Services, Inc., (Defendant's Exhibits A and B). Further, [Crystal] attached an unexecuted Purchase Agreement dated in 2012 identifying [Jason] and [Crystal] as the buyers of Jardine Funeral Home, Inc.

{¶ 8} The court analyzed the arguments and evidence contained within these filings and found that some of the evidence on which Crystal relied must not

be considered because it was not based on personal knowledge but on "information and belief." The court determined that while the reason for Jason's cash withdrawals from business accounts was not established by evidence, the withdrawals of cash have never been denied by Jason. The court went on to state that it found the following disturbing: "a withdraw[al] of $60,000.00 by Jason for an unknown reason. Multiple cash withdraw transactions by Jason for unknown reasons. Reallocation of marital business funds by Crystal into separate bank accounts in Crystal's own name." The court went on to find "that both parties are reallocating large sums of money without explanation, oversight, or care of the state of the business."

{¶ 9} Finally, the court stated:

> After due consideration and for good cause shown, the Court finds that both the Plaintiff and Defendant's funds and interests in the jointly owned, and marital property, of Yurch Funeral Home Services, Inc., Vodrazka Funeral Services, Inc., Jardine Funeral Home Inc., Cleveland Cremation LLC, and Jardine-Ordner LLC, in danger of being lost, removed, or materially injured. Further, as the contentious motion practice has shown, the parties are unable to collaborate on running and sustaining the marital business. Additionally, the Court finds that a prompt resolution to the pending divorce would obviate the need for a receiver, but as the docket displays, the longer the proceedings extend, the more necessary appointment of a receiver becomes.

> An appointment of a receiver is necessary to preserve assets and protect the interests of both parties during the pendency of the litigation currently pending before this Court. Therefore, taking into consideration all the facts and circumstances of the case, the affidavits, arguments, exhibits, and inferences presented by both parties, the Court GRANTS Crystal's motions to appoint a receiver. This appointment will be subject to limitations imposed by the Court.

{¶ 10} The court then named a receiver and gave the receiver 60 days to do the following: To marshal assets, to "ascertain the person(s) in effective control of operation of the named business entities," to review accounts and records and determine if they are maintained according to generally accepted accounting principles, to conduct an accounting, and to evaluate the operations of the businesses and determine if they are being prudently managed. The court also ordered the receiver to be compensated from the assets of the marital businesses and/or pursuant to R.C. 2333.27, a statute dealing with the compensation of receivers in collections actions. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

{¶ 11} The appointment of a receiver can have far-reaching consequences. It is "an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury." *Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc.*, 83 Ohio App.3d 643, 649, 615 N.E.2d 662 (8th Dist.1992), citing *Hoiles v. Watkins*, 117 Ohio St. 165, 174, 157 N.E. 557, 559 (1927). "Because the appointment of a receiver is such an extraordinary remedy, the party requesting the receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights." *Id.*, citing *Malloy v. Malloy Color Lab, Inc.*, 63 Ohio App.3d 434, 437, 579 N.E.2d 248 (10th Dist.1989). The appointment of a receiver is an equitable power that may be exercised by certain

courts. R.C. 2735.01. As such, it is trusted to their sound discretion and will only be disturbed when the court abuses that decision. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 72-73, 573 N.E.2d 62 (1991). Jason must show that the decision is arbitrary, unconscionable, or unreasonable. *Id.* at 74.

**B. Appointment of a Receiver Over Marital Assets**

{¶ 12} Jason asserts a single assignment of error, claiming the trial court erred in granting Crystal's motion to appoint a receiver over the parties' business entities.

{¶ 13} R.C. 2735.01(A)(1) is the source of authority for the trial court to appoint a receiver in this case. It provides that judges of various Ohio courts may appoint a receiver in certain enumerated circumstances. One of those circumstances is an action "between partners or others jointly owning or interested in any property or fund * * * when it is shown that the property or fund is in danger of being lost, removed, or materially injured." Further, under R.C. 2735.01(A)(7), a court may appoint a receiver in any action where receivers have typically been appointed by the usage of equity. The use of a receiver to maintain and administer marital property during the pendency of a divorce is such an instance. *Lockard v. Lockard*, 175 Ohio App.3d 245, 2008-Ohio-1577, 886 N.E.2d 276, ¶ 7 (4th Dist.).

{¶ 14} It is not uncommon for a receiver to be appointed in domestic relations cases, especially in cases where there are allegations of concealment or dissipation of assets. *See Lockard* at ¶ 7, citing *Parker v. Elsass*, 10th Dist. Franklin Nos. 01AP-1306, 02AP-15, and 02AP-144, 2002-Ohio-3340; *Ratliff v. Ratliff*, 10th

Dist. Franklin No. 97APF10-1294, 1998 Ohio App. LEXIS 3614 (Aug. 18, 1998); *Indus. Credit Co. v. Ken Ray Corp.*, 8th Dist. Cuyahoga No. 23512, 1955 Ohio App. LEXIS 772 (June 8, 1955); *Honess v. Ghali*, 8th Dist. Cuyahoga No. 71518, 1997 Ohio App. LEXIS 3545 (Aug. 7, 1997). *See also* 46 Ohio Jurisprudence 3d, Family Law, Section 572 (2022); 24 American Jurisprudence 2d, Divorce and Separation, Section 567 (2022) ("The trial court may appoint a receiver in a divorce action if it deems the appointment to be necessary and equitable in order to preserve and protect one or both parties."). Indeed, "if a party is allegedly dissipating or concealing assets during a pending divorce proceeding, that is the time when a receiver should be appointed." *Id.* at ¶ 8. In these instances, a trial court does not abuse its discretion when the appointment of a receiver is necessary for the preservation of the rights of the parties and to protect one or both parties from irreparable harm.

{¶ 15} In *Lockard*, the Fourth District found that allegations of dissipating or concealing assets was enough for the trial court to appoint a receiver: "In the instant case we recognize that at this juncture no evidence has been adduced to establish that appellant has concealed or dissipated assets. Appellee, however, has advanced that claim. Surrendering assets to a receiver will protect their integrity until the court can make a distribution." *Id.* The Fourth District went on to affirm the appointment of a receiver. However, the court determined that the trial court erred in the scope of the receivership, including giving the receiver the power to sell assets that may not be marital property. The court stated that the trial court should

determine whether the property at issue was marital or separate property before being disposed by the receiver.

{¶ 16} Here, the trial court specifically had the parties address their ownership interest in the businesses. The court determined that the businesses at issue were marital property and evidence in the record demonstrated that each party owned a 50 percent interest.[1] The trial court did not appoint a receiver for other entities where a joint ownership interest was not shown. The court also found that large sums of money were being transferred from the businesses by both parties. Jason claimed that any expenditures on his part were for business purposes but did not otherwise provide evidence to substantiate the expenditures Crystal cited that constituted dissipation of assets.

{¶ 17} Crystal alleged that Jason issued checks for $8,500 to his father, $7,120 to a company owned by Jason's uncle, $1,260 to Ohio Catholic Federal Credit Union, $3,000 to Charles A. Lewis and Associates, an unspecified amount to Dennis L. Tomazic, and $8,220 to an unrelated funeral home for an unknown reason; withdrew $2,000 in cash from a company checking account; used roughly $14,216.08 based on Crystal's information and belief for personal use; withdrew $13,543.76 from the accounts of two funeral homes owned by the parties; took $25,800.20 in cash from two funeral homes; received $13,000 in rebates that are

---

[1] A trial court may err when it appoints a receiver over property that is not jointly owned. *See McQuain v. McQuain*, 55 Ohio App. 505, 9 N.E.2d 893 (9th Dist.1937). Here the trial court took great pains to require the parties to establish their ownership interests in the businesses at issue. The filings establish that each business is 50 percent owned by Jason and 50 percent owned by Crystal.

the property of the businesses received as rebates from casket companies; and that he leased a personal vehicle with company funds. Crystal attached several cancelled checks to her April 1, 2021 supplemental emergency motion to appoint a receiver. Other evidence Crystal attached to her motion were "transaction entries" that she created. Further, some of the purported reasons for the transactions were not based on her personal knowledge but on information and belief. The trial court discounted allegations that were only based on Crystal's information and belief, but this did not exclude all the evidence offered by Crystal.

{¶ 18} In response, Jason attacked the quality of the evidence and asserted that the expenses that were properly demonstrated were for business reasons. Jason argues that the trial court erred in finding that he did not deny allegations that he made cash withdrawals for unknown reasons. He points to his affidavit attached to his April 16, 2021 brief in opposition for support. However, this affidavit only contains his own unsupported statement that expenditures were for business purposes and that Crystal's own statements in her affidavit and attached "transaction reports" "do not accurately reflect the facts and circumstances of the case. Rather, the descriptions which the defendant * * * relies upon to support her motions to appoint a receiver are nothing more than her own self-serving statements." Jason did not otherwise explain these transactions and did not clarify what the "facts and circumstances" were to justify the expenditures. His denials do not refute Crystal's averments that were based on her personal knowledge and supported by evidence.

{¶ 19} According to Jason, there was not clear and convincing evidence demonstrating the need for a receiver because all the evidence was based on Crystal's own self-serving statements and on her "information and belief." He likens this case to *Poindexter v. Grantham*, 8th Dist. Cuyahoga No. 95413, 2011-Ohio-2915.

{¶ 20} There, this court reversed an order appointing a receiver where a trial court held an informal hearing on a motion to appoint a receiver that was not preserved for the record. We concluded that the trial court did not have sufficient evidence before it to determine the motion: "the trial court acknowledged that it did not receive any testimony or exhibits. Absent some basis for the appointment of the receiver, we cannot determine whether evidence 'tending to prove the facts essential to sustain the order,' was presented and relied upon by the trial court." *Id*. at ¶ 12, quoting *Equity Ctrs. Dev. Co.*, 83 Ohio App.3d at 649, 615 N.E.2d 662. Unlike *Poindexter*, here, the trial judge conducted significant briefing of the issues, with affidavits and evidence submitted.

{¶ 21} In fact, a trial court may consider all the surrounding facts and circumstances when deciding whether to appoint a receiver. *State ex rel. Celebrezze*, 60 Ohio St.3d at 73, 573 N.E.2d 62. It may consider evidence and information before it, not necessarily only evidence provided in motions or at a hearing dedicated to the issue. *Gemmell v. Anthony*, 2016-Ohio-2686, 51 N.E.3d 663, ¶ 35 (4th Dist.). For instance, in a motion to show cause filed by Crystal on May 18, 2021, she alleged in an affidavit that Jason sought and received a $300,000 construction loan to

construct a building at the location of one of the funeral homes. Crystal averred that the loan was, without her consent, secured by real property in which she had an interest. Jason filed a brief in opposition to the motion. He did not offer any explanation for the transaction but claimed that the documents attached were not admissible and should be disregarded. The trial court set a hearing date of August 6, 2021, ordering Jason to personally appear.

{¶ 22} Further, this court does not reweigh the evidence the court considered.

> The order for an interim receiver may be reviewed only for the purpose of determining whether there is evidence tending to prove the facts essential to sustain the order, and a reviewing court may not consider the weight of the evidence. *Malloy v. Malloy Color Lab., Inc.*, 63 Ohio App.3d 434, 436, 579 N.E.2d 248 [(10th Dist.1989)]. Such order may be reversed only when there is failure of proof which would be essential to support the order, and the order may not, in any event, be reversed upon the weight of the evidence. *Id.*, citing *Wilgus v. Arthur*, 72 Ohio App. 511, 53 N.E.2d 197 [(3d Dist.1943)].

*Equity Ctrs. Dev. Co.*, at 649-650. *See also Helms v. Thomas*, 2018-Ohio-1534, 111 N.E.3d 72, ¶ 24 (2d Dist.), quoting *Malloy* at 436 (An "'order for an interim receiver may be reviewed only for the purposes of determining whether there is evidence tending to prove the facts essential to sustain the order, and a reviewing court may not consider the weight of the evidence.'").

{¶ 23} Jason also alleges that the trial court ignored evidence he submitted. Jason attached affidavits to his various briefs in opposition, including five from employees of the various businesses. He claims these affidavits showed that Crystal only performed "'some bookkeeping services'" for the funeral homes because he

averred that the financial operations of the funeral homes are performed by corporate accountants, payroll companies, and marketing consultants. However, the trial court's finding is consistent with these affidavits — Crystal handled financial aspects of the businesses. These affidavits from various employees establish that Crystal ordered office supplies, paid bills, and managed aspects of payroll, for which, according to the other records submitted by Jason, she received not an insubstantial salary. Two employee affidavits described Crystal as operating as a bookkeeper for the business where each person was employed. A third employee averred that Crystal handled aspects of payroll and purchased office supplies. A fourth affidavit indicated that Crystal handled financial operations of one of the funeral homes, including billing, invoicing, and depositing payments.

{¶ 24} These affidavits are consistent with the trial court's findings. According to Jason, the trial court should have found that Crystal did not have any controlling function over the operation of the various businesses. This is despite her 50 percent ownership interest in the affected businesses and affidavits from herself and employees submitted by Jason that she handled certain financial aspects of the businesses.

{¶ 25} Jason also claims his denials and supporting affidavits mean that there is competing evidence in the record, requiring the court to hold a hearing.

{¶ 26} There is no requirement that a trial court hold a hearing before appointing a receiver. *Cawley JV, L.L.C. v. Wall St. Recycling L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 8 (8th Dist.), quoting *Victory White Metal Co. v. N.P. Motel*

*Sys., Inc.*, 7th Dist. Mahoning No. 04 MA 245, 2005-Ohio-2706, ¶ 54 ("an evidentiary hearing is not necessary in all cases. '[W]here the court is sufficiently convinced that the property is in danger from a review of the affidavits * * * admissions and inferences that can be rationally drawn from these materials and from any arguments presented[,]' then a decision appointing a receiver without hearing is not in error."). *See also Cincinnati v. PE Alms Hill Realty, L.L.C.*, 2017-Ohio-1569, 90 N.E.3d 156 (1st Dist.). In fact, a court may, when appropriate, sua sponte appoint a receiver. *Pal v. Strachan*, 8th Dist. Cuyahoga No. 91808, 2009-Ohio-730.

{¶ 27} Jason also argues that the trial court erred because appointment of a receiver and the added expense would be detrimental to the operation of the businesses. Citing to *Equity Ctrs. Dev. Co.*, 83 Ohio App.3d 643, 615 N.E.2d 662, he claims that when the appointment of a receiver is detrimental to a companies' financial and/or operating performance, it is contrary to the purpose of the appointment. In that case, specific evidence was offered that tended to show that the appointment of a receiver could render the partnership insolvent. *Id.* at 651. Further, we reversed the appointment of a receiver because the trial court failed to make any determination about the necessity of the receiver in relation to rights, claims, and interests of the parties. *Id.* Here, there is no similar evidence that was before the trial court at the time it made its decision. The only evidence of detrimental financial impact is a conclusory averment in an affidavit submitted by Jason that the appointment would be detrimental.

{¶ 28} Jason also asserts that the trial court failed to consider less drastic options. However, he does not identify what those might be. The trial court entered restraining and protective orders to preserve the status quo, which both parties are accused of violating. The parties have equal ownership interests in the businesses at issue and their relationship has degraded to the point where they can no longer work together for the common good of their joint ventures. Until the parties can extricate themselves from the complicated web within which they have trapped themselves, the trial court took appropriate steps to safeguard these assets both for the parties and for the businesses.

{¶ 29} We acknowledge that it is Crystal's obligation to show, by clear and convincing evidence, the need to appoint a receiver. Because Crystal's allegations of dissipation of assets were supported by some evidence and Jason offered general denials without any supporting documentation or elaboration, we cannot say that the trial court abused its discretion when it granted Crystal's motion. As the Fourth District found, a court may appoint a receiver in a divorce action when there are allegations of dissipation of assets until a resolution of the divorce action. *Lockard*, 175 Ohio App.3d 245, 2008-Ohio-1577, 886 N.E.2d 276. In this case, the extensive and contentious litigation, the allegations and evidence that the parties cannot cooperate in the operation of the business, and the evidence of actions of both parties dissipating business assets demonstrate that the trial court did not err in the

appointment of a receiver to preserve the businesses, their assets, and the rights of the parties during the pendency of the divorce proceedings.[2]

### C. Costs and Powers of the Receiver

{¶ 30} Jason also argued that the trial court did not appropriately limit the receiver's fees and expenses.

{¶ 31} "'The primary purpose of a receiver is to carry out the orders of the * * * court, which has the power "to exercise its sound discretion to limit or expand a receiver's powers as it deems appropriate."'" *Carr v. Acacia Country Club Co.*, 8th Dist. Cuyahoga No. 97989, 2012-Ohio-4723, ¶ 29, quoting *Natl. City Bank v. Semco, Inc.*, 183 Ohio App.3d 229, 2009-Ohio-3319, 916 N.E.2d 857, ¶ 8 (3d Dist.), quoting *State ex rel. Celebrezze*, 60 Ohio St.3d at 74, 573 N.E.2d 62. The receiver and any experts hired by the receiver are entitled to reasonable compensation for their time, effort, and expenses. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 74. The amount of fees awarded by an appointing court is reviewed for an abuse of discretion. *Id.* The costs associated with a receivership may be taxed as costs to the parties. R.C. 2735.04(C). The costs of the receivership may also be paid out of the corpus of the receivership estate. *Richey v. Brett*, 112

---

[2] It appears the trial court did err when it found both that Jason made an unexplained $60,000 withdrawal from accounts and that he made multiple unexplained withdrawals. In Crystal's filings, she alleges that Jason made unexplained withdrawals for personal use totaling more than $60,000, which was supported by some cancelled checks but also Crystal's self-generated "transaction statements," which the trial court discounted. However, this does not show that the trial court abused its discretion in appointing a receiver. The other findings by the trial court are supported by evidence in the record.

Ohio St. 582, 148 N.E. 92 (1925), syllabus. *See also Sobin v. Lim*, 2014-Ohio-4935, 21 N.E.3d 344 (8th Dist.); *Brown v. Winterbottom*, 98 Ohio St. 127, 120 N.E. 292 (1918); *Williams v. Schneider*, 2018-Ohio-968, 109 N.E.3d 124, ¶ 130-139 (8th Dist.).

{¶ 32} The trial court referenced R.C. 2333.27 when addressing the receiver's compensation. However, by its terms, this statute only applies to actions that fall within R.C. 2333.09 through 2333.27, dealing with judgment debtors. R.C. 2735.04(C) provides generally the same provisions for compensation to be "taxed as costs or otherwise treated as an administrative expense of the action."

{¶ 33} The trial court's order included the following statement regarding the compensation of the receiver:

> The Receiver, and his agents, including his counsel, and any accountants that are appointed by the Court, shall be entitled to reasonable compensation for services rendered and reimbursement for expenses incurred which are (a) related to the Receiver's duties, rights, and obligations under this order or any future orders of the Court and applicable law; (b) related to the marshalling, investigating, accounting, or protection of the Property; or (c) the defense or prosecution of any claim or suit brought by or against the Receiver and his agents or by the Receiver against any person or entity.

{¶ 34} The trial court limited the cost of the receivership to only reasonable compensation related to the receiver's duties. The court also gave the receiver a limited duration within which to accomplish the required tasks. There is no indication that these limitations placed on the receiver and the accumulation of fees are insufficient to control the costs of the receivership. The trial court may exercise

its discretion in controlling these costs such that the receivership does not jeopardize the financial viability of the businesses.

{¶ 35} Finally, at oral arguments, Jason took issue with the powers bestowed on the receiver, especially the first power — the marshalling of assets. He claimed this is something that is seen in foreclosure cases, which is inappropriate here.

{¶ 36} To marshal assets means to locate and take control of assets. *See In re Estate of Coleman*, 55 Ohio App.3d 261, 262, 564 N.E.2d 116 (6th Dist.1988). The term marshal means "to arrange in proper order; set out in an orderly manner; arrange clearly." *Webster's Unabridged Dictionary* 1179 (2d Ed.1998). The marshalling of assets occurs in many contexts. *See* 2 Ohio Securities Law and Practice OSB 19.36 (2021); 13 Ohio Jurisprudence, Business Relationships. Section 1191 (2022); *In re All Cases Against Sager Corp.*, 132 Ohio St.3d 5, 2012-Ohio-1444, 967 N.E.2d 1203, ¶ 8. A receiver is "'"[a]n indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation, and receive its rents, issues, profits, and apply or dispose of them at the direction of the court."'" (Emphasis deleted.) *In re All Cases Against Sager Corp.* at ¶ 30, quoting *State ex rel. Celebrezze*, 60 Ohio St.3d at 74, 573 N.E.2d 62, fn. 4, quoting *Black's Law Dictionary* 1268 (6th Ed.1990). To preserve assets, the receiver must have the power to identify and gather those assets.

{¶ 37} Further, a receiver may not be used solely to secure evidence. *Schultze v. Schultze*, 5 Ohio App.2d 261, 263, 214 N.E.2d 841 (2d Dist.1964). Here, a portion of the receiver's responsibilities assigned by the trial court amounts to fact-

finding akin to discovery or to secure evidence. For instance, the court charged the receiver with determining to what extent the parties had a hand in the daily operations of the businesses. However, these do not make up the bulk of the receiver's responsibilities, which include to marshal assets, to perform an accounting, and to ensure that the businesses are being managed appropriately, and to secure and protect the assets of the businesses. Here, the receiver was not appointed purely to accomplish aspects of discovery.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

This court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR