[Cite as *Rehn v. INVCLE150, L.L.C.*, 2022-Ohio-4634.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LORI REHN,                                              :

      Plaintiff-Appellee,                     :

                                          No. 111313

      v.                                       :

INVCLE150, LLC, ET AL.,                     :

      Defendants-Appellees.                   :

[Appeal by Pearce Holdings,                 :
LLC, ET AL.,

                               :

      Proposed-Intervenors-
Appellants]

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 16, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-947601

---

### *Appearances:*

Meyers, Roman, Friedberg & Lewis, Richard M. Bain, and
R. Scott Heasley, *for appellees* Zip Management Ohio,
LLC, and ACE and Deuce Capital LLC.

Jody M. Oster, *for appellants*.

EMANUELLA D. GROVES, J.:

**{¶ 1}** Appellants Pearce Holdings, LLC; R. Deane Linsky; Constance C. Linsky; Peter Linsky; 1520 Ventures Inc. Solo 401(k); Peter Linsky, Trustee; Specialized Trust Company Custodian FBO Peter Linsky IRA; Specialized IRA Services FBO Peter Linsky Roth IRA; Specialized IRA Services FBO Kim Linsky Roth IRA; Nathan Horner, AKA: Nathan Shawn Horner; Specialized RA Services FBO Nathan Horner; and Specialized Trust Company Custodian FBO Amy Horner ROTH IRA (the "Appellants") appeal the decision of the trial court that granted appellees ZIP Management Ohio, LLC, and ACE and Deuce Capital, LLC's (the "Appellees") motion to appoint a receiver. For the reasons that follow, we affirm.

**Factual and Procedural History**

**{¶ 2}** The underlying case was filed by Lori Rehn ("Rehn"). On May 14, 2021, Rehn filed suit against Matthew Motil ("Motil"), INVCLE150, LLC ("INVCLE150"), BUYCLE158, LLC ("BUYCLE158"), BUYCLE175, LLC ("BUYCLE175") (collectively, the "codefendant entities") and John Doe Corporations #1 through #5. In her complaint, Rehn alleged that she and Motil entered into an agreement whereby she would loan Motil $150,000 for a period of 12 months. The money was to be divided into three loans, secured by mortgages on three separate properties. Each LLC was the titled owner of one property: INVCLE150, LLC, owned 13529 Leroy Avenue; BuyCLE158, LLC, owned 13410 Wainfleet Avenue, and BUYCLE175, LLC, owned 3318 Hearthstone Road. The agreement called for monthly payments on each loan for a period of 12 months, with

a final balloon payment at the end of that term. Motil was also supposed to record Rehn's interest in the properties as mortgages.

{¶ 3} Per Rehn's complaint, Motil represented that she would be the first lien holder on the properties and that the properties were unencumbered. Rehn discovered that this was not true. She alleged that unbeknownst to her, the properties were already mortgaged. Further, she claimed that Motil misrepresented the value of the properties. Rehn also alleged that Motil did not pay the loans as agreed, nor did he record her mortgages on the properties. In her complaint, Rehn sought money damages and a declaratory judgment establishing her interest in the properties.

{¶ 4} On July 14, 2021, Appellees filed a motion to intervene in the lawsuit. Appellees alleged that they held unrecorded mortgage interests in the properties on Wainfleet and Hearthstone and that Motil and the codefendant entities had defaulted on their loans as well. The trial court granted Appellees' motion to intervene on November 8, 2021.

{¶ 5} On August 24, 2021, Ryan Maider filed a motion to intervene in the lawsuit alleging that he had an interest in the Leroy property. Additionally, on October 1, 2021, Lou-Ann Krause and Mark D. O'Limpio filed a motion to intervene, alleging an interest in the Wainfleet and Hearthstone properties, as well as another property at 4027 Rocky River Drive, also owned by a Motil company. The court granted both parties' motions to intervene on November 8, 2021.

{¶ 6} On January 18, 2022, Appellees filed a motion for the appointment of a receiver. Appellees requested that the receiver take charge of, operate, manage, preserve, and collect accounts, revenues, and other income of the codefendant entities. The motion included a draft court order that requested that the receiver have the power to "control, operate, and manage the Investment Properties and any other real property owned by, held on behalf of, or purchased by [Motil] * * * under any entity owned or controlled by Motil, including, but not limited to [the codefendant entities]."

{¶ 7} On January 25, 2022, Motil and the codefendant entities filed a motion objecting to the appointment of a receiver, arguing "summarily Defendants do not disagree with Plaintiffs, specifically, that the appointment of a receiver over the Defendants and their assets is in Plaintiff's interests." Rather, they argued that they, through a nonparty entity in which Motil held an interest, had made a similar request in another case pending in the common pleas court. That motion was already scheduled for a hearing before a magistrate.

{¶ 8} The trial court scheduled a hearing on the motion for receiver in this case for January 27, 2022.

{¶ 9} On January 26, 2022, an attorney for Bridge Loan Venture V Trust 2017-1 ("Bridge") filed a limited appearance in the case as a nonparty creditor. Bridge alleged that it held a mortgage on one of the properties, specifically 4027 Rocky River Drive, and that it had initiated a foreclosure on the property in the common pleas court. Counsel also filed an objection to Appellees' motion for

appointment of a receiver and requested to participate in the motion hearing. Bridge did not object to the appointment of a receiver, per se. The company informed the court in its objection that it had requested the appointment of a receiver in its foreclosure action. Bridge argued its motion filed in the foreclosure action should take priority.

{¶ 10} On January 27, 2022, an attorney for Appellants filed a limited appearance in the case as nonparty creditors for the purpose of objecting to and participating in the receivership hearing. Appellants alleged that they held mortgages on the Leroy, Wainfleet, and Hearthstone properties. The motion did not state the nature of or the basis for their objection to the appointment of a receiver.

{¶ 11} The trial court held the receivership hearing on the afternoon of January 27, 2022. The plaintiff, defendants, and intervening parties participated in the hearing. It is unclear from the record on appeal whether Appellants' or Bridge's representative participated in the hearing.[1] The trial court subsequently granted Appellees' motion and appointed a receiver. On February 9, 2022, the trial court filed a supplemental order describing the scope of the receiver's authority. The order included a list of 88 "Receivership Properties," consisting of real property owned by a variety of LLCs controlled by defendant Motil. It also contained a list of "Related Entities," i.e., LLCs other than the defendants, owned or controlled by Motil. The trial court gave the receiver the power to "control, operate, and manage the

---

[1] Although both Appellants and Bridge filed limited appearances and requested to participate in the hearing, the record does not reflect whether that request was granted. Additionally, Appellants have not submitted the transcript of the hearing for our review.

Receivership Properties and any other real property owned by, held on behalf of, or purchased by Motil and/or any entity owned or controlled by Motil including, but not limited to, the [co]Defendant Entities and the Related Entities."

{¶ 12} On February 22, 2022, Appellants filed a notice to intervene in the proceedings. On February 25, 2022, Appellants filed a notice of appeal. On March 11, 2022, Motil filed a "Notice of Order for Relief in Bankruptcy Case of Defendant Matthew Motil and Suggestion of Stay."

**The Suggestion of Bankruptcy Stay**

{¶ 13} Preliminarily, we asked the parties to show cause why this appeal should not be stayed due to defendant Motil's suggestion of bankruptcy stay. Appellants, noting that Motil only filed personal bankruptcy, argue that the stay does not apply to the codefendant entities or the properties held in their names. Appellants concede, however, that the stay would affect any proceedings that involve Motil personally or any property in his name. Appellees agree with this stance and also argue that the bankruptcy stay under 11 U.S.C. 362(a)(1) only applies to nondebtor codefendants, i.e., the codefendant entities, in unusual circumstances that do not apply here.

{¶ 14} Appellants' appeal deals with the authority of the trial court to appoint a receiver in this matter. The trial court's order purports to address the properties owned by the codefendant entities, nonparty entities, and any properties owned by Motil directly. The Receivership Properties list attached to the court's order only includes properties owned by codefendant entities and nonparty entities.

Furthermore, the properties in which Appellants have an interest are owned by codefendant entities. Pursuant to 11 U.S.C. 362(a)(1), a bankruptcy filing automatically stays

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

{¶ 15} Courts have noted, however, that "while these automatic stay provisions stay all proceedings against the debtor, they generally do not operate to stay claims against nondebtor defendants." *Baechel v. Republic Storage Sys., LLC*, N.D.Ohio No. 5:16-cv-1403, 2018 U.S. Dist. LEXIS 39164, 7 (Mar. 9, 2018). *See also Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir.1993) ("[T]he stay of § 362 is extremely broad in scope * * * and should apply to almost any type of formal or informal action against the debtor or the property of the estate. * * * [The stay] does not extend, however, to separate legal entities such as corporate affiliates, partners in debtor partnerships or to codefendants in pending litigation." 2 Collier on Bankruptcy P 362.04 (15th Ed.1993)).

{¶ 16} Nevertheless, the stay may apply to those defendants in "'"unusual circumstances."'" *Baechel*, quoting *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir.2000), quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir.1992). Notably, however, these "extensions" are "in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need

to take * * * action to protect the administration of the bankruptcy estate." *Patton* at *id.*

{¶ 17} Citing to *Patton*, this court has found that we lack authority to extend a bankruptcy stay to nondebtor codefendants. Such relief must be sought through bankruptcy court. *Jo-Rene Corp. v. Jastrzebski*, 8th Dist. Cuyahoga Nos. 79933 and 80310, 2002-Ohio-1550, citing *Patton* at *id.*

{¶ 18} This appeal addresses receivership property owned by the codefendant entities. Accordingly, the bankruptcy stay does not apply to this action unless someone petitions the bankruptcy court to extend the stay to the codefendant entities. The record fails to show that the codefendant entities filed for bankruptcy, which would create their own automatic stay. Nor is there evidence that Motil's stay was extended to his companies. Based on the foregoing, we find that the stay does not prevent this appeal from going forward.

{¶ 19} Therefore, we turn to the assignments of error Appellants have raised for our review:

### Assignment of Error No. 1

The trial court failed to specify what evidence it relied upon, and therefore, the Receivership Order should be vacated.

### Assignment of Error No. 2

The trial court abused its discretion in appointing a receiver in an action where only money damages were sought.

## Assignment of Error No. 3

The trial court abused its discretion in appointing a receiver because Appellees did not satisfy all elements of R.C. 2735.01(A)(1).

## Assignment of Error No. 4

The trial court erred in granting a receiver authority to sell properties free and clear of liens when secured creditors were not served with the Receivership Motion and opposed appointment of a receiver.

## Law and Analysis

## Standard of Review

{¶ 20} The appointment of a receiver is "'an extraordinary, drastic and sometimes harsh power which equity possesses and is only to be exercised where the failure to do so would place the petitioning party in danger of suffering an irreparable loss or injury.'" *Jardine v. Jardine*, 8th Dist. Cuyahoga No. 110670, 2022-Ohio-1754, ¶ 11, quoting *Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc.*, 83 Ohio App.3d 643, 649, 615 N.E.2d 662 (8th Dist.1992), citing *Hoiles v. Watkins*, 117 Ohio St. 165, 157 N.E. 557 (1927). The receivership statute, R.C. 2735.01, provides both legal and equitable remedies. *See Helms v. Thomas*, 2018-Ohio-1534, 111 N.E.3d 72, ¶ 28 (2d Dist.) (noting that R.C. 2734.01(7) is a catchall provision which authorizes the appointment of a receiver "[i]n all other cases in which receivers have been appointed by the usages of equity," and that, for example, R.C. 2735.01(A)(1) and (6) are legal remedies permitting the appointment of a receiver, citing *Gemmell v. Anthony*, 2016-Ohio-2686, 51 N.E.3d 663, ¶ 41 (4th Dist.)), citing *Victory White*

*Metal Co. v. N.P. Motel Sys., Inc.*, 7th Dist. Mahoning No. 04 MA 245, 2005-Ohio-2706, ¶ 74-75.

{¶ 21} The party requesting the receivership bears the burden of showing "'by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights.'" *Jardine* at ¶ 29, quoting *Equity Ctrs. Dev. Co.* at 649, citing *Malloy v. Malloy Color Lab, Inc.*, 63 Ohio App.3d 434, 437, 579 N.E.2d 248 (10th Dist.1989). "'Clear and convincing evidence' is that 'measure or degree of proof' that 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re V.F.*, 8th Dist. Cuyahoga No. 111388, 2022-Ohio-2960, ¶ 54, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The decision to appoint a receiver is discretionary and, therefore, will not be disturbed unless the trial court abuses that discretion. *Jardine* at ¶ 11, citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 72-73, 573 N.E.2d 62 (1991). A trial court abuses its discretion when its decision is arbitrary, unconscionable, or unreasonable. *Id.*, citing *Gibbs* at 74.

**<u>Appellants' Assignments of Error</u>**

{¶ 22} For ease of analysis, we will address the assignments of error in combination and/or out of order as necessary.

{¶ 23} The first and third assignments of error are interrelated in that they both question the evidence the trial court used to support the appointment of the receiver. In the first assignment of error, Appellants argue that the trial court erred when it did not specify the evidence it relied on when it decided to grant the motion

for receivership. In the third assignment of error, Appellants argue that the trial court abused its discretion in appointing a receiver because Appellees did not satisfy all elements of R.C. 2735.01(A)(1).

{¶ 24} While the trial court did not identify the specific evidence it relied on to make its ruling, its February 9, 2022 journal entry noted that the January 27, 2022 hearing was to address Appellees' motion for receiver, the codefendant entities' objections and supplemental objections to that motion, the objection of nonparty Bridge; the joinder of Motil to Bridge's objection, and the objection of nonparty Appellants. The trial court then found that after considering the

> pleadings, filings, and evidence submitted by the parties, and the arguments made before the Court at the hearing held on January 27, 2022, the Court finds the Motion for the Appointment of a Receiver well-taken and hereby GRANTS the same.

{¶ 25} Appellants argue that the trial court was required to explain what evidence supported its conclusions and that the failure to do so requires its order to be vacated. However, R.C. 2735.01 does not require the trial court to make findings of facts or conclusions of law.

{¶ 26} While Appellants challenge the content of the journal entry, none of the cases they cite stand for the proposition that the trial court is *required* to place its findings in a journal entry. In those cases, the appellate courts were focused on the lack of evidence supporting the trial court's decision and sometimes looked at the journal entry to determine the reasoning behind it. In *Jensen v. Zanesville Heart Specialists, Inc.*, 5th Dist. Muskingum No. CT2003-0043, 2004-Ohio-873,

the trial court appointed a receiver. The court of appeals, however, found that the trial court did not hold a hearing, there were no affidavits attached to the receivership motion, and, in addition, the journal entry did not denote what evidence the trial court considered. Those factors led the appellate court to find that the trial court's order was not supported in the record. *Id.* at ¶ 15. In *BFD Investors v. Hershey Pasta Group*, 8th Dist. Cuyahoga No. 67831, 1995 Ohio App. LEXIS 963, 4 (Mar. 16, 1995), this court found the trial court abused its discretion in appointing a receiver when there was no hearing, affidavits, depositions, or other evidentiary material to support the trial court's order. We did not overrule the decision based on the contents of the trial court's journal entry. Similarly, in *Huntington Natl. Bank v. HPM Div.*, 10th Dist. Franklin No. 10AP-200, 2010-Ohio-6176, and *Debartolo v. Dussault Moving, Inc.*, 8th Dist. Cuyahoga No. 96667, 2011-Ohio-6282, the courts simply found that a trial court abuses its discretion by appointing a receiver when there is no evidence in the record to support it.

{¶ 27} *Neece v. Natl. Premier Protective Servs.*, 8th Dist. Cuyahoga No. 89643, 2007-Ohio-5960, is the closest a court comes to focusing on the journal entry, but it is likewise distinguishable. The trial court's entry in that case indicated it ruled based on the arguments of counsel. However, we found that there was no evidentiary material in the record supporting the trial court's appointment of a receiver. Focusing on the lack of evidence, we found "there was no evidence, in the form of affidavits or testimony, which addressed the various issues the trial court was required to consider before appointing a receiver." *Id.* at ¶ 12. We then

concluded that the trial court's order was not supported by clear and convincing evidence. *Id.* at ¶ 13. Accordingly, based on the foregoing, we must look at the evidence in the record to accurately address the trial court's decision.

{¶ 28} In addressing the trial court's ruling, we review simply to determine "whether there is evidence tending to prove the facts essential to sustain the order" and we "may not consider the weight of the evidence." *Equity Ctrs. Dev. Co.,* 83 Ohio App.3d at 649-650, 615 N.E.2d 662, citing *Malloy,* 63 Ohio App.3d at 436, 579 N.E.2d 248.

{¶ 29} In the third assignment of error, Appellants argue that Appellees failed to establish by clear and convincing evidence that receivership was proper under R.C. 2735.01(A)(1). However, under R.C. 2735.01, the trial court has the discretion to appoint a receiver if it determines by clear and convincing evidence that *any* of the bases under that statute are present. R.C. 2735.01(A) ("A receiver may be appointed by * * * the court of common pleas or a judge thereof in the judge's county * * * in causes pending in such courts respectively" under certain designated circumstances.).

{¶ 30} In the instant case, there was evidence in the record that supported the appointment of a receiver under both R.C. 2735.01(A)(1) and (6). Those sections provide that a receiver may be appointed:

> (1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to the creditor's claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds of the property or

fund, is probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;

* * *

(6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights.

{¶ 31} A review of the record establishes that the codefendant entities submitted exhibits to the trial court detailing what appears to be a plan to sell off its properties. We say "appears to be" because while we have the exhibits, the transcript of the hearing in which the exhibits were introduced was not provided for our review. The burden is on the appellant to provide a transcript to support its arguments on appeal. App.R. 9(B)(1).

> "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm."

*Mahoning Natl. Bank v. Wilhelm*, 7th Dist. Mahoning Nos. 04 MA 248 and 04 MA 249, 2006-Ohio-6132, ¶ 8, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶ 32} Even without the transcript there is evidence in the record to support the trial court's ruling. The defendants' Exhibits B and C support the ruling. Those two exhibits indicate that 84 of the defendants' properties were in foreclosure actions or pending foreclosure. This evidence supports both R.C. 2735.01(A)(1) and (6). It shows that properties that the Appellees have interests in were in danger of

being lost, removed, or materially injured under 2735.01(A)(1). Further it suggests the imminent danger of insolvency of the defendant entities based on the foreclosure of 84 of its properties under R.C. 2735.01(A)(6).

{¶ 33} Additionally, defendants admitted in their answer to Rehn's complaint that she loaned them $150,000. The defendants' answer further indicated that the promissory notes and mortgages "speak for themselves." The documents indicate that Rehn supplied $60,000 to be secured by a mortgage on the Leroy property, $50,000 to be secured by a mortgage on the Hearthstone property, and $40,000 to be secured by a mortgage on the Wainfleet property.

{¶ 34} Moreover, defendant entities also admitted Appellee Zip loaned them $42,000 for the Wainfleet property and Appellee ADC loaned them $80,000 for the Hearthstone property. This evidence suggests that at a minimum, the defendant entities had received $60,000 to be secured by the Leroy property, $130,000 for the Hearthstone property, and $82,000 for the Wainfleet property.

{¶ 35} However, according to defendants' Exhibit B, the tax assessed values of the properties were as follows: the Leroy property $51,000; the Hearthstone property $88,500; and the Wainfleet property $23,400. Again, this was evidence that the properties were overleveraged and in danger of being lost, removed, or materially injured. Additionally, the fact that two intervenors claimed an interest in some of the properties illustrated the risk of loss of assets.

{¶ 36} Undeniably, there were facts in the record that supported the trial court's order. Additionally, because Appellants failed to provide a transcript of the

receivership hearing, we must presume the validity of those proceedings and presume that its decision was based upon clear and convincing evidence.

{¶ 37} Accordingly, Appellants first and third assignments of error are overruled.

{¶ 38} In the second assignment of error, Appellants argue that the trial court erred and abused its discretion when it appointed a receiver where only money damages were sought.

{¶ 39} Preliminarily, Appellees sought both monetary damages and declaratory judgments to establish their interest in the respective properties based on the applicable promissory notes and mortgages.

{¶ 40} Furthermore, courts have found that the appointment of a receiver under both R.C. 2735.01(A)(1) and (6) are legal remedies. *Helms*, 2018-Ohio-1534, 111 N.E.3d 72, at ¶ 28, citing *Gemmell*, 2016-Ohio-2686, 51 N.E.3d 663, at ¶ 41, citing *Victory White Metal Co.*, 7th Dist. Mahoning No. 04 MA 245, 2005-Ohio-2706, at ¶ 74-75.

{¶ 41} R.C. 2735.01 explicitly grants the trial court authority to appoint a receiver under (A)(1) when the action involves "a creditor to subject property," or "a party whose right to or interest in the property or the proceeds of property is *probable* and it is shown the property is in danger of being lost, removed, or materially injured." Appellants argue that Appellees did not have an interest in the properties; however, the codefendant entities admitted to issuing promissory notes and mortgages to Appellees for two of their properties.

{¶ 42} Next, Appellants argues that R.C. 2735.01(A)(1) requires that the property be the subject of the action. However, in the instant case, Appellees also requested a declaratory judgment establishing their rights in the defendants' properties. A declaratory judgment action "provides a remedy in addition to other legal and equitable remedies that may be available." *Highland Tavern, LLC v. DeWine*, 10th Dist. Franklin No. 21AP-176, 2021-Ohio-4067, ¶ 11, citing *Burge v. Ohio Atty. Gen.*, 10th Dist. Franklin No. 10AP-856, 2011-Ohio-3997, ¶ 7, citing *Victory Academy of Toledo v. Zelman*, 10th Dist. Franklin No. 07AP-1067, 2008-Ohio-3561, ¶ 8. The purpose of declaratory judgment under R.C. Chapter 2721, "'is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations and it is to be liberally construed and administered.'" *State ex rel. CannAscend Ohio LLC v. Williams*, 10th Dist. Franklin No. 18AP-820, 2020-Ohio-359, ¶ 29, quoting *One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 17AP-829, 2019-Ohio-359, ¶ 30, citing *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.*, 51 Ohio St.3d 131, 134, 554 N.E.2d 1324 (1990), citing *Radaszewski v. Keating*, 141 Ohio St. 489, 496, 49 N.E.2d 167 (1943). Accordingly, because Appellees' complaint contained a prayer for declaratory judgment under R.C. 2721.01 delineating their rights under the mortgages and notes, the properties were a subject of the action and subject to receivership under R.C. 2735.01(A)(1).

{¶ 43} Even if that were not the case, R.C. 2735.01(A)(6) allows the appointment of a receiver when the company is in imminent danger of insolvency.

Based on the record, and the presumption of validity given to the trial court's decision, we find that the trial court's order regarding the properties was supported by the evidence.

{¶ 44} Accordingly, the second assignment of error is overruled.

{¶ 45} Finally, in the fourth assignment of error, Appellants argue that the trial court erred in granting a receiver authority to sell properties free and clear of liens when the secured creditors were not served with the receivership motion and opposed appointment of the receiver. This argument misstates what the court ordered.

{¶ 46} The trial court's order states at paragraphs 11 and 21:

11. Subject to further [order] of this Court [sic], the Receiver is authorized to sell the Receivership Properties free and clear of all liens and encumbrances by private sale, private auction, public auction, or by any other method the Receiver, in his good faith and reasonable discretion, believes will maximize the proceeds received from the sale.

* * *

21. The Receiver is hereby authorized to take any and all actions authorized in R.C. 2735.04, subject to obtaining the Court's approval in those instances that R.C. 2735.04 requires court approval.

{¶ 47} Accordingly, the trial court's order merely spells out the powers of the receiver that comport with the powers explicitly defined by statute under R.C. 2735.04. R.C. 2735.04(B)(5) grants the receiver the power "under the control of the court that appointed the receiver" to "sell and make transfer of real or personal property." One of the requirements that must be met prior to such a sale is that

[a]t least ten days' prior written notice is given in accordance with the Rules of Civil Procedure to all of the owners of the real property, all parties to the action, and all other persons with a recorded or filed lien encumbering the real property to be sold as those persons are identified in a preliminary judicial report or a commitment for an owner's policy of title insurance previously filed with the court pursuant to section 2329.191 of the Revised Code or, if not previously filed, in a preliminary judicial report or a commitment for an owner's policy of title insurance filed with the application of the receiver for authority to sell the real property that otherwise complies with the requirements of section 2329.191 of the Revised Code, unless the lien or interest is barred by lis pendens pursuant to section 2703.26 of the Revised Code.

R.C. 2735.04(D)(2)(b).

{¶ 48} Consequently, the receivership statute gives the trial court inherent authority to appoint a receiver when the statutory conditions are met, and R.C. 2735.04 defines the powers of the receiver, including the sale of the properties free and clear of liens.

{¶ 49} The cases cited by Appellants are examples of cases that describe what happens *after* the receiver is appointed and are thus inapplicable here. Those cases present a different posture than the one before us.

{¶ 50} In the instant case, the trial court's order reflects that an appointed receiver has the power to act as authorized by the applicable statute, R.C. 2735.04, including the power to sell the properties unencumbered. Further, such a sale may happen if, and only if, the receiver obtains the court's approval and creditors are given notice and an opportunity to be heard.

{¶ 51} Accordingly, the fourth assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EMANUELLA D. GROVES, JUDGE

SEAN C. GALLAGHER, A.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR